STATE OF CONNECTICUT v.
SALVATORE CARACOGLIA
(AC 22607)

Foti, Schaller and Flynn, Js.

Argued May 2—officially released July 15, 2003

*Darcy McGraw*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Timothy J. Liston*, state's attorney, and *George Ferko, Sr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Salvatore Caracoglia, appeals from the judgment of conviction, rendered after a jury trial, of two counts of breach of the peace in violation of General Statutes (Rev. to 2001) § 53a-181 (a) (2) and (5).[1] On appeal, the defendant claims that the trial court

[1] General Statutes (Rev. to 2001) § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or

improperly allowed the state to amend the information. The defendant also claims that § 53a-181 (a) (5) is unconstitutional under the first[2] and fourteenth[3] amendments to the United States constitution because it is vague and overbroad, and that he was convicted under that statute in violation of article first, §§ 5[4] and 8,[5] of the Connecticut constitution. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Stephen Ozga, had known each other since the late 1970s and had had a friendly relationship until recent years. On September 1, 2001, the parties were no longer friendly and happened to meet at about noon at the Ace Hardware Store on South Main Street in Middletown.

The defendant approached the victim, stood directly in front of him and said, "I want to talk to you, motherfucker." The victim replied, "Sal, get away from me," and tried to walk around the defendant to get to his car. The defendant, however, pursued him and said, "You asshole, you motherfucker." The reply again was, "Sal, would you just get away from me?" For a third time, the defendant called the victim a "motherfucker."

---

obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which he is not licensed or privileged to do . . . ."

[2] The first amendment to the United States constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . ."

[3] The fourteenth amendment to the United States constitution provides in relevant part: "No state shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person . . . the equal protection of the laws."

[4] Article first, § 5, of the Connecticut constitution provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."

[5] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have the right . . . to be informed of the nature and cause of the accusation . . . ."

As the victim again tried to get around the defendant, the defendant punched him in the chest near the left shoulder. At that point, the victim said, "Sal, let's straighten this out. Let's call a cop. Let the cop straighten this out." The defendant again punched the victim on the left side. The victim turned to retreat into the store, and the defendant kicked him in his buttocks. At no time did the victim attempt to strike the defendant. At the time of the attack, people were walking in the parking lot and passing in cars.

I

The defendant first claims that the court improperly permitted the state to amend the information after the conclusion of all the evidence in violation of Practice Book § 36-18. On appeal, our review of the court's decision to permit an amendment to the information is one of abuse of discretion. *State* v. *Morris*, 49 Conn. App. 409, 416, 716 A.2d 897, cert. denied, 247 Conn. 904, 720 A.2d 516 (1998).

Practice Book § 36-18 provides in relevant part: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. . . ." The only limiting requirement under that section is that the state may not charge additional or different offenses in an amendment and that the amendment may not prejudice the substantive rights of the defendant. *State* v. *Prat*, 66 Conn. App. 91, 98, 784 A.2d 367 (2001). Practice Book § 36-18 "is primarily a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend. . . . It is the defendant's burden to provide a specific showing of prejudice resulting from the state's delay in providing notice of the charge

against which [he] must defend." (Citation omitted; internal quotation marks omitted.) *State* v. *Morris*, supra, 49 Conn. App. 415.

In this case, the state, on October 24, 2001, by substitute information, charged the defendant with two counts of breach of the peace in violation of § 53a-181.[6] The trial began on October 30, 2001. On November 2, 2001, after the parties had presented all the evidence, but before closing arguments and jury instructions by the court, the state filed its second substitute information, which still contained two counts of breach of the peace. In count one, however, the state eliminated the allegations of "recklessly creating a risk" and "engaging in tumultuous behavior." Count one, therefore, alleged as relevant "that the defendant, acting with the intent to cause inconvenience, annoyance or alarm, used abusive or obscene language in a public place . . . ." Count two remained unchanged.

The defendant, who had requested a charge to the jury on self-defense, was told by the court during a charging conference that the court would deliver such an instruction as to count two, but not as to count one. The defendant responded: "Just to put on the record, Judge, I note that when the case was originally submitted to the jury in the original information, was read to them, it did include tumultuous behavior which would connote some sort of physicality and, therefore, I understand that the state has amended that. The court's position is that it would not apply since it's only language. Just note that, I guess I don't have much of an objec-

---

[6] Count one alleged, inter alia, that the defendant "acting with the intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, engaged in tumultuous behavior in a public place and used abusive or obscene language in a public place . . . in violation of Section 53a-181 (a) (1) and (a) (5) . . . ." Count two alleged, inter alia, that the defendant "did assault or strike another person . . . in violation of Section 53a-181 (a) (2) . . . ."

tion—I don't have much of a basis to object on the current case law. I just say on the grounds of fairness, I think that the case was originally submitted—count one originally submitted as tumultuous behavior, and on that basis I'd object. I don't think it's fair . . . [t]o the extent that the information was amended at this late stage in the game once both sides had already rested their cases."

The very limited record also discloses that the court stated: "It's just [the] court's belief, though, to address that issue at least briefly, that the state is allowed to amend the information up until the time the jury receives it for deliberation so long as the state does not increase or change the charge against the defendant. So, it's the court's position that the state is allowed to, in fact, conform its information to what it believes it has presented to the jury beyond a reasonable doubt, and your exception to the state amending the information is noted, but I don't believe there is any basis to prevent the state because [it] did not increase or change the charge in any manner." The defendant argues that the court failed to make a finding of good cause and failed to find that he was not prejudiced.

The defendant's failure to object on the basis of a lack of good cause speaks for itself.[7] The basis of the defendant's objection at trial was "fairness," specifically, that his self-defense argument was taken away

[7] The defendant does not argue that the state may not amend an information to conform to the evidence as presented; see *State* v. *Ryan*, 53 Conn. App. 606, 620, 733 A.2d 273 (1999); or dispute that Practice Book § 36-18 is limited only by the requirement that no additional or different offense may be charged in and no substantive rights of the defendant may be prejudiced by an amended information. *State* v. *Van Eck*, 69 Conn. App. 482, 491, 795 A.2d 582, cert. denied, 260 Conn. 937, 802 A.2d 92, cert. denied, 261 Conn. 915, 806 A.2d 1057 (2002). Under the circumstances of this case, because the state deleted a reference to one subdivision and because the defendant made no objection as to "good cause," we conclude that the court's action implies a finding of good cause.

because "tumultuous behavior" was not proven and therefore was removed from the case. The defendant's position is without merit. The sole issue on his claim is whether the amended information gave him sufficient notice of the charges to allow him to prepare an adequate defense. *State* v. *Tanzella*, 226 Conn. 601, 608, 628 A.2d 973 (1993). The defendant does not claim, nor can he, that the state charged an additional or different offense by the omission of "tumultuous" behavior, and cannot demonstrate that a substantive right may have been prejudiced by the amended information.

"Moreover, an amendment to an information does not necessarily prejudice a defendant's substantive rights within the meaning of Practice Book § [36-18] simply because the defendant may have evidence available to contradict a factual allegation of the original charge, and, as a result of the amendment, he no longer faces that particular factual allegation." Id., 615 n.15.

Because the amendment deleted one of the two subdivisions, the defendant would be hard pressed to show prejudice or that the amended information in any way deprived him of adequate notice for preparation of his defense. We conclude that the court did not abuse its discretion in allowing the state to amend the information.

## II

The defendant next claims that prosecution under the first count pursuant to § 53a-181 (a) (5) violated his constitutional right to a fair trial because the statute is vague and overbroad. The defendant did not raise that issue at trial and, thus, failed to preserve it properly for appeal. Nevertheless, a defendant may prevail on an unpreserved claim of constitutional error if it meets

all of the conditions set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8]

We conclude that the record is adequate for review and that the claim is of constitutional magnitude. See *State* v. *Indrisano*, 228 Conn. 795, 800–801, 640 A.2d 986 (1994) (in reviewing unpreserved constitutional claim of vagueness, first two prongs of *Golding* met where record reflects defendant convicted under statute in question and sufficiently shows conduct that formed basis of conviction). We therefore proceed by addressing *Golding*'s third prong, namely, whether a clear constitutional violation deprived the defendant of a fair trial. Id.

The defendant alleges that subdivision (5) of § 53a-181 (a) has become unconstitutionally vague and overbroad. He claims that because our Supreme Court also has construed subdivision (1) as encompassing a proscription of "fighting words," that creates an inherent ambiguity about the meaning of "the use of abusive or obscene language in a public place," and that he could not have foreseen that his actions would constitute a breach of the peace. He also claims that subdivision (5) is overbroad, as it no longer proscribes "fighting words" and, therefore, is susceptible to arbitrary enforcement and may be used to proscribe otherwise protected speech. We disagree with both assertions.

As a preliminary matter, we note that legislative enactments carry with them a strong presumption of

---

[8] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

constitutionality. *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 876, 792 A.2d 774 (2002). A party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt. Id. "In the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face. . . . In construing a statute, the court must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Citations omitted; internal quotation marks omitted.) *Sassone* v. *Lepore*, 226 Conn. 773, 778, 629 A.2d 357 (1993). We construe statutes to give effect to all of their provisions. *State* v. *Szymkiewicz*, 237 Conn. 613, 621, 678 A.2d 473 (1996).

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. . . . [The doctrine] embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . The United States Supreme Court has emphasized that the more important aspect of the vagueness doctrine is not actual notice, but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement. . . . Thus, [i]n order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited . . . and must not impermissibly [delegate] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. . . . Finally, [i]f the meaning of a statute can be fairly ascertained a statute will not be void for

vagueness . . . for [i]n most English words and phrases there lurk uncertainties. . . . [T]he statute must contain some core meaning within which the defendant's actions clearly fall. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 551–53, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002).

"The general rule is that the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue." *Packer* v. *Board of Education*, 246 Conn. 89, 105, 717 A.2d 117 (1998). "To do otherwise, absent the appearance that the statute in question intrudes upon fundamental guarantees, particularly first amendment freedoms, would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of [the statute]." (Internal quotation marks omitted.) Id., 106. "[W]hen an allegedly vague statute implicates the first amendment right of free speech, the statute's constitutionality is tested for vagueness on its face." (Internal quotation marks omitted.) *State* v. *Ehlers*, 252 Conn. 579, 584, 750 A.2d 1079 (2000). In such a case, "the defendants may challenge the validity of a statute's application to marginal situations even though [their] own conduct may clearly fall within the statute's proscriptions." (Internal quotation marks omitted.) *State* v. *Proto*, 203 Conn. 682, 697, 526 A.2d 1297 (1987).

The basis of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by freedom of speech. *Ramos* v. *Vernon*, 254 Conn. 799, 812, 761 A.2d 705

(2000). Challenges for vagueness and overbreadth are closely related, but they are not identical. *State* v. *Indrisano*, supra, 228 Conn. 798 n.4. In certain situations, however, they may be functionally indistinguishable. *State* v. *Proto*, supra, 203 Conn. 706.

The defendant argues that our courts have introduced "confusion into the definition of 'fighting words' under Connecticut's breach of the peace statute [in that it] fails to provide notice of what conduct is proscribed under subdivision (a) (1) as opposed to (a) (5), and there are now insufficient guidelines to protect from arbitrary and discriminatory enforcement." The defendant argues that "abusive language" cannot be penalized unless it consists of "fighting words," but that not all forms of fighting words necessarily are "abusive or obscene."

In *State* v. *Indrisano*, supra, 228 Conn. 795, our Supreme Court, in considering the mens rea required by the disorderly conduct statute, General Statutes § 53a-182, stated that "the predominant intent is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." *State* v. *Indrisano*, supra, 810. Under "subdivision (1) of § 53a-182 (a) . . . physical fighting, and physically violent, threatening or tumultuous behavior" rather than mere verbal speech is prohibited. Id., 812. In *Szymkiewicz*, a case in which the breach of the peace statute, § 53a-181 (a) (1) was at issue,[9] our Supreme Court stated that § 53a-181 (a) (1) "does not require proof of actual physical conduct on the part of the defendant with a

---

[9] Our Supreme Court in *Szymkiewicz* found the interpretation of the language in the disorderly conduct statute, General Statutes § 53a-182, to be applicable to the breach of the peace statute, General Statutes § 53a-181 (a) (1). *State* v. *Szymkiewicz*, supra, 237 Conn. 618–20.

victim," and concluded "that a fair reading of *Indrisano* indicates that speech can be proscribed not only when accompanied by actual physical conduct, but also when it can be identified as fighting words that portend physical violence." *State* v. *Szymkiewicz,* supra, 237 Conn. 620. Through those cases, our Supreme Court has concluded that the words "engaged in fighting or in violent, tumultuous or threatening behavior" should not reach speech protected by the first amendment.

Our Supreme Court stated that "[s]ubdivision (1) of § 53a-181 (a) proscribes speech that properly can be characterized as fighting words when, under the totality of the circumstances, that speech amounts to 'violent, tumultuous or threatening behavior' that portends violence, while subdivision (5) proscribes 'abusive or obscene language.' " Id., 622. The court also made clear that all forms of fighting words were not necessarily abusive or obscene, and that the court would, "[w]hen and if a case arises in which the prosecution proceeds under subdivision (5) of § 53a-181 (a) . . . construe 'abusive' and 'obscene' under the particular facts of that case, taking into account, of course, the principle that the legislative language may not be considered as mere surplusage." Id.

Although the constitutionality of subdivision (5) of § 53a-181 (a) was not at issue, the *Szymkiewicz* court rejected a surplusage argument and did not disturb the fighting words gloss from the punishment of abusive speech. "Fighting words" may consist of language that is neither obscene nor abusive. The language of the statute leads us to conclude that the distinction that may be drawn between the "fighting words" as contemplated under subdivision (1) and those under subdivision (5) can be found "under the totality of the circumstances," as expressed in *Szymkiewicz,* which gives rise to the use of the words. Subdivision (1) proscribes fighting words uttered in a violent, tumultuous or threatening

manner; id., 618–20; whereas subdivision (5) proscribes fighting words that tend to induce immediate violence by the person or persons to whom the words are uttered because of their raw effect. The core meaning of subdivision (5) remains intact; fighting words may arise in different contexts not confined to abusive or obscene language. We therefore must conclude that § 53a-181 (a) (5) is not unconstitutionally vague.

"To determine whether a statute reaches a substantial amount of constitutionally protected conduct, we must first interpret its language and determine the scope of its prohibitions." *State* v. *Linares*, 232 Conn. 345, 365, 655 A.2d 737 (1995). We view subdivision (5) as not prohibiting protected speech or other expressive conduct. Speech or expressive conduct is not proscribed unless and until the words or expressive conduct rise to the level of fighting words so as to result in a breach of the peace. Subdivision (5) is not overbroad; it does not prohibit constitutionally protected speech. We therefore conclude that there was no clear constitutional violation that deprived the defendant of a fair trial and that his claim fails to satisfy the third prong of *Golding*.

III

The defendant also alleges that his conviction under subdivision (a) (5) violated article first, §§ 5 and 8, of the constitution of Connecticut. The defendant in his principal brief states that "Connecticut decisions have left an unsolvable ambiguity as to the meaning of 'abusive or obscene' under subdivision (a) (5) of the breach of the peace statute. Thus, for all the reasons the statute is vague and overbroad under federal analysis, it is so for purposes of the Connecticut constitution." Although we agree that an even greater degree of scrutiny may be applied under our state constitution, we conclude that § 53a-181 (a) (5) is not vague or overbroad under

the Connecticut constitution for the same reasons that it is not vague or overbroad under the federal constitution. As discussed in part II, "abusive language" may be interpreted as "fighting words," which are not protected by our state constitution.

The judgment is affirmed.

In this opinion the other judges concurred.