STATE OF CONNECTICUT *v.* KEVIN MOORE
(AC 24197)

Foti, West and DiPentima, Js.

Argued February 9—officially released March 30, 2004

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael A. Pepper*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Kevin Moore, appeals from the judgment of conviction, rendered after a trial to a three judge court, of murder in violation of General Statutes § 53a-54a (a).[1] The defendant claims that the evidence was insufficient to sustain his conviction of murder.[2] We affirm the judgment of the court.

In rendering its decision, the court observed that the defendant did not contest the fact that he had caused the death of the victim, Margaret Woods, by stabbing her with a knife. The court further observed that the issue before it was whether the state had proven that the defendant acted with the requisite mental state, that is, whether the state had proven beyond a reasonable doubt that he intended to cause the victim's death. The court then recited the following findings of fact:

"The victim lived . . . in New Haven with her mother, sister and two children. In February, 1999, the defendant moved his personal effects into that apartment and commenced living there with the victim and continued to do so until December 11, 1999. During that period of time, their relationship was marked with verbal and physical confrontations.

"In the early morning hours of December 11, 1999, the defendant returned home intoxicated and was con-

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] The defendant concedes that the evidence was sufficient for a conviction of the lesser offense of manslaughter and asks that we reverse the judgment and remand the matter to the trial court with direction to substitute that charge and to sentence him accordingly.

fronted by the victim, who told him to gather his belongings and to leave the apartment. After the argument, the defendant slept on the living room floor, and the victim returned to her bedroom. The confrontation resumed when they awoke later that morning, and he packed his belongings, but left the apartment without them.

"At approximately 10 p.m., he, the defendant, returned to the apartment, having been driven there by his cousin, Idelier Pettigrew. The victim let the defendant into the apartment, and they resumed arguing with each other when the victim accused him of having another woman drive him to the apartment. The defendant began to put his personal effects in the car, and the argument continued. Upon reentry, the argument escalated into a physical confrontation with each of them holding onto each other.

"During this confrontation, the victim's mother, upon hearing the argument, left the back bedroom and entered the living area where she tried physically to separate the victim and the defendant. The defendant was attacking the victim by hitting her and pulling at her hair and clothes. The victim's mother tried to separate them without success. The defendant and victim were standing, and the defendant was holding the victim's shirt in the area of the neck. The defendant knelt on one knee while pulling the victim toward him by the grip that he had on her shirt. At this time, the defendant held in his other hand a knife, and as he continued to pull the victim toward him, he thrust upward with that knife, stabbing the victim in the middle of the chest. The blade of the knife went through the breast plate, puncturing the victim's heart and causing her death. The wound was three inches deep; it was a vertical stab wound requiring the use of force. The defendant withdrew the knife from the wound without rendering aid and left the apartment with the knife.

"The defendant subsequently fled to Florida where he remained until he was extradited in August of the year 2000." Additional facts will be set forth as necessary to resolve the defendant's claim.

The defendant argues that the evidence at trial was insufficient to sustain his conviction of murder. Specifically, he claims that the state failed to prove beyond a reasonable doubt that he caused the death of the victim, which he had admitted, with the specific intent to kill her.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 377–78, 796 A.2d 1191 (2002).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged [offense], each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . [I]n determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . [A]n inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Citation omitted; internal quotation marks omitted.) *State* v. *Glasper*, 81 Conn. App. 367, 371, 840 A.2d 48 (2004).

"Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant *intended the natural consequences of his voluntary conduct.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Smith*, 35 Conn. App. 51, 63–64, 644 A.2d 923 (1994).

The evidence presented at trial established beyond a reasonable doubt the defendant's intent to kill the victim. On two prior occasions, the defendant had threatened the victim, once with a knife, cutting her on the arm, and once with scissors. His relationship with the victim was volatile. On the morning of the incident, the victim ordered the defendant to leave her apartment. That same morning, the defendant took a steak knife from the kitchen but did not return it. When he returned to the apartment that evening, the defendant assaulted the victim during a physical dispute.

The evidence further demonstrated that during that dispute, the defendant knelt down on one knee while pulling the victim downward. The defendant removed the steak knife from his back pocket, pulled the victim closer toward him and thrust the knife into her chest. The defendant thrust the knife into the victim's chest with such force that he penetrated her breast plate and punctured her heart. The defendant then put the knife back into his pocket, left the apartment and fled to Florida where he remained for six months.

On the basis of that evidence, the fact finder was justified in not giving credence to the defendant's claims that he intended only to poke the victim's shirt with the knife and that he did not intend to kill her. The evidence presented was sufficient to support the court's finding beyond a reasonable doubt that the defendant had intended to kill the victim. As our Supreme Court has reasoned "[o]ne who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 259, 681 A.2d 922 (1996). Here, the defendant, with a substantial degree of force, thrust the knife into the victim's heart after having pulled the victim toward him. It was not unreasonable for the court to infer that the defendant possessed the intent to kill the victim.

The judgment is affirmed.

In this opinion the other judges concurred.