STATE OF CONNECTICUT *v.* JOYCE
BENNETT-GIBSON
(AC 23619)

Foti, Dranginis and DiPentima, Js.

Argued April 1—officially released July 20, 2004

*Jon L. Schoenhorn,* with whom was *Jeanne M. Zulick,* for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *Christopher L. Morano,* chief state's attorney, and *Kimberley N. Perrelli,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Joyce Bennett-Gibson, appeals from the judgment of conviction, rendered after a jury trial, of tampering with a witness in violation of General Statutes § 53a-151 (a).[1] On appeal, the defen-

---

[1] General Statutes § 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding."

dant claims that (1) the evidence was insufficient to sustain her conviction, (2) General Statutes § 53a-151 is unconstitutionally vague and overbroad, (3) the trial court improperly instructed the jury, (4) the court improperly admitted certain evidence, and (5) the court improperly refused to disclose the victim's name at trial. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In the summer of 1999, the victim, Marta E.,[2] lodged a criminal complaint with the Hartford police department, claiming that Aaron Bennett, the defendant's brother, had sexually assaulted her. Aaron Bennett subsequently was arrested and charged with several offenses, including aggravated sexual assault in the first degree.

In September, 1999, when Marta E. attended one of Aaron Bennett's scheduled court dates at the Superior Court in the judicial district of Hartford, a woman introducing herself as Mary, whom Marta E. identified at trial as the defendant, approached Marta E. as she exited the courthouse. The defendant began talking with Marta E. about Aaron Bennett and his family's feelings about the situation. The defendant stated that she would help Marta E. financially, including paying her bills, obtaining her an apartment or anything else necessary to "drop the case from her brother." Although Marta E. attempted to refuse the defendant's request, the conversation ended with Marta E. stating that she would "think about it."

Approximately five days after that encounter, the defendant telephoned Marta E., asking if she thought about "it." Marta E. told her that she had her "own

<hr />

[2] In accordance with General Statutes § 54-86e, as amended by Public Acts 2003, No. 03-202, § 15, and this court's policy of protecting the privacy interests of victims in sexual abuse matters, we decline to identify the victim by name, or others through whom the victim's identity may be ascertained.

problems and family problems," but the defendant responded with an offer to provide Marta E. with financial assistance if she would "excuse the case or cut the case." Approximately one month later, the defendant again telephoned Marta E., asking her if she thought about "it." Marta E. responded that she was still thinking about it, but that she had had her own problems. The defendant again stated that she would help Marta E. financially because she needed to help her brother; neither the defendant nor her family wanted him to go to jail. The defendant telephoned Marta E. a third and final time approximately two months later. The defendant again asked Marta E. if she had thought about "it." Specifically, she stated that she could help Marta E. if Marta E. helped her.

On December 28, 1999, during the state's investigation, an investigator from the office of the chief state's attorney obtained a written statement from Marta E. On July 31, 2002, in an amended long form information, the state charged the defendant with tampering with a witness in violation of § 53a-151 (a). Specifically, the state alleged that the defendant, "believing that an official proceeding was pending, did attempt to induce a witness to absent herself from any official proceeding . . . ."

On August 2, 2002, the jury returned a guilty verdict and the defendant subsequently was sentenced to thirty months incarceration, execution suspended after ten months, with five years of probation. This appeal followed. Additional facts and procedural history relevant to the defendant's claims will be set forth as necessary.

I

The defendant first claims that there was insufficient evidence before the jury to sustain her conviction of tampering with a witness.[3] We do not agree.

[3] Because the defendant elected to put on evidence following the denial of her motion for a judgment of acquittal, which she made after the close

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Moore*, 82 Conn. App. 267, 270, 843 A.2d 652, cert. denied, 269 Conn. 904, 852 A.2d 734 (2004).

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Rivera*, 74 Conn. App. 129, 136, 810 A.2d 824 (2002).

To support the defendant's conviction, the state had to prove that (1) the defendant believed that an official proceeding was pending against her brother or was about to be instituted and (2) the defendant induced or attempted to induce Marta E. to absent herself from

of the state's case-in-chief, our review of her sufficiency of the evidence claim must be conducted in light of all the evidence presented at trial. See *State* v. *Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1984); *State* v. *Wright*, 62 Conn. App. 743, 748–49, 774 A.2d 1015, cert. denied, 256 Conn. 919, 774 A.2d 142 (2001).

that proceeding. See General Statutes § 53a-151 (a). The defendant does not challenge the allegation that she believed that an official proceeding was pending against her brother. The defendant argues that the evidence was insufficient to show that she induced or attempted to induce Marta E. to absent herself from that proceeding.

To prove inducement or an attempt thereof, the evidence before the jury must be sufficient to conclude that the defendant's conduct was intended to prompt Marta E. to absent herself from the proceeding.[4] See *State* v. *Cavallo*, 200 Conn. 664, 668, 513 A.2d 646 (1986). "Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant *intended the natural consequences of his voluntary conduct*." (Emphasis in original; internal quotation marks omitted.) *State* v. *Moore*, supra, 82 Conn. App. 271.

The jury had before it ample evidence of the defendant's motive and intent to convict her of tampering with a witness. The jury reasonably could have found that the defendant intended that Marta E. absent herself from the proceeding. Specifically, the jury reasonably could have interpreted the defendant's request that Marta E. "drop the case from her brother" and to "excuse the case or cut the case," viewed in light of the defendant's expressed concerns with her brother's

[4] Although *State* v. *Cavallo*, 200 Conn. 664, 513 A.2d 646 (1986), held that General Statutes § 53a-151 applies to "any conduct that is intended to prompt a witness to testify falsely or refrain from testifying"; *State* v. *Cavallo*, supra, 668; we conclude that it applies equally to conduct intended to prompt a witness to absent themselves from an official proceeding. See part III.

situation and her desire to help him, as a request that Marta E. absent herself from the proceeding.

Our conclusion is further supported by the court's jury instruction: "[O]nly a state's attorney or a prosecutor has authority to nolle or unilaterally terminate a prosecution if the victim in a sex assault case does not cooperate with the prosecutor or absents herself from the proceedings . . . ." The defendant, however, argues that her request that Marta E. "drop the case" or "excuse or cut the case," combined with the testimony of Marta E. that the defendant never told her to move out of state, avoid getting a subpoena or not to come to court if someone summoned her, cannot amount to a request that Marta E. absent herself from the proceeding because Marta E. could not unilaterally terminate the prosecution.

Although the defendant is correct in her recitation of the surrounding circumstances, we conclude that the jury reasonably could have concluded that the defendant intended that Marta E. absent herself from the proceedings. Notwithstanding the inability of Marta E. to terminate the case unilaterally, the jury reasonably could have interpreted the defendant's statements as a request that Marta E. do whatever was in her power that could possibly have an adverse effect on the case.[5] As the victim in the underlying sexual assault case, the absence of Marta E. from the proceedings would be the most effective action that she could take that possibly would affect the outcome and dispose of the case. Consequently, viewing the evidence in the light most favorable to sustaining the verdict, it is reasonably possible that the jury, on the basis of the cumulative force of the evidence, interpreted the defendant's statement as

[5] Although the absence of Marta E. from the proceeding would not guarantee its disposal, the jury still could reasonably have concluded that the defendant intended that the absence of Marta E. would in fact dispose of the case.

a request that Marta E. absent herself from the proceeding.

## II

The defendant next claims that § 53a-151 (a) is unconstitutionally vague and overbroad. We do not agree.[6]

The defendant did not properly preserve that claim at trial[7] and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] We review the defendant's claim under *Golding* because the record is adequate for review and the claim is of constitutional magnitude. "[A] claim that a statute is unconstitutionally vague implicates a defendant's fundamental due process right to fair warning." *State* v. *Stewart*, 77 Conn. App. 393, 403, 823 A.2d 392, cert. denied, 265 Conn. 906, 831 A.2d 253 (2003). The defendant, however, fails to satisfy *Golding*'s third prong

---

[6] The defendant also argues that § 53a-151 (a) is unconstitutionally vague and overbroad because the court did not instruct the jury using the "judicial gloss" of *State* v. *Cavallo*, supra, 200 Conn. 668. For the reasons set forth in part III as to why the court did not instruct the jury improperly, the defendant's argument must fail.

[7] The defendant concedes that she did not file a motion to dismiss challenging the constitutionality of § 53a-151.

[8] "In *Golding*, our Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Bangulescu*, 80 Conn. App. 26, 32, 832 A.2d 1187, cert. denied, 267 Conn. 907, 840 A.2d 1171 (2003).

because she has failed to establish that a constitutional violation clearly exists.

"[L]egislative enactments carry with them a strong presumption of constitutionality. . . . A party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt. . . . In the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face." (Citations omitted; internal quotation marks omitted.) *State* v. *Caracoglia*, 78 Conn. App. 98, 105–106, 826 A.2d 192, cert. denied, 266 Conn. 903, 832 A.2d 65 (2003).

Section 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding."

A

The defendant first agues that § 53a-151 (a) is unconstitutionally void for vagueness. We do not agree.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. . . . [The doctrine] embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . The United States Supreme Court has emphasized that the more important aspect of the vagueness doctrine is not actual notice, but . . . the requirement that a legislature establish minimal

guidelines to govern law enforcement. . . . Thus, [i]n order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited . . . and must not impermissibly [delegate] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Internal quotation marks omitted.) *State* v. *Caracoglia* , supra, 78 Conn. App. 106.

The language of § 53a-151 plainly warns potential perpetrators that the statute applies to conduct that is intended to prompt witnesses to absent themselves from an official proceeding that the perpetrator believes to be pending or imminent. "The legislature's unqualified use of the word 'induce' clearly informs persons of ordinary intelligence that any conduct, whether it be physical or verbal, can potentially give rise to criminal liability. . . . By limiting the statute's application to situations where the perpetrator believes that an official proceeding is pending or about to be instituted, the legislature indicated that it did not envisage outlawing conduct that inadvertently convinces a witness to [absent himself or herself from an official proceeding.] The legislature's choice of the verb 'induce' connotes a volitional component of the crime of tampering that would have been absent had it employed a more neutral verb such as 'cause.' Furthermore, the statute's application to unsuccessful, as well as successful, attempts to induce a witness to [absent himself or herself from an official proceeding] supports our conclusion that the statute focuses on the mental state of the perpetrator to distinguish culpable conduct from innocent conduct." (Citations omitted.) *State* v. *Cavallo*, supra, 200 Conn. 668–69.[9]

[9] Although *Cavallo* discusses § 53a-151 in the context of inducing someone to testify falsely or to refrain from testifying, we conclude that its holding that the language of § 53a-151 plainly warns potential perpetrators applies

The defendant repeatedly contacted Marta E. in an attempt to have her "drop," "excuse" or "cut" the case in exchange for a pecuniary reward. In light of the plain language of § 53a-151 (a) and our holding in *State* v. *Cavallo*, supra, 200 Conn. 668, we cannot conclude that the defendant did not possess fair warning, nor can we conclude that the statute does not provide minimal guidelines to govern law enforcement. See *State* v. *Higgins*, 74 Conn. App. 473, 488–89, 811 A.2d 765, cert. denied, 262 Conn. 950, 817 A.2d 110 (2003); see also *State* v. *Cavallo*, supra, 668–69.

B

The defendant next argues that § 53a-151 (a) is unconstitutionally overbroad under both the United States and Connecticut constitutions. Specifically, the defendant argues that the statute infringes on the constitutional right to free speech and may cause others not before this court to refrain from constitutionally protected activity. We do not agree.

"A clear and precise enactment may . . . be overbroad if in its reach it prohibits constitutionally protected conduct. . . . A single impermissible application of a statute, however, will not be sufficient to invalidate the statute on its face; rather, to be invalid, a statute must reach a substantial amount of constitutionally protected conduct. . . . A [defendant] may challenge a statute as facially overbroad under the first amendment, even if the [defendant's] conduct falls within the permissible scope of the statute, to vindicate two substantial interests: (1) eliminating the statute's chilling effect on others who fear to engage in the expression that the statute unconstitutionally prohibits; and (2) acknowledging that every [person] has the right not to be prosecuted for expression under a constitu-

equally to situations in which a defendant attempts to induce someone to absent himself or herself from a proceeding. See part III.

tionally overbroad statute. . . . Thus, the [defendant] has standing to raise a facial overbreadth challenge to the [statute] and may prevail on that claim if he can establish that the [statute] reaches a substantial amount of constitutionally protected conduct even though he personally did not engage in such conduct." (Internal quotation marks omitted.) *State* v. *DeLoreto*, 265 Conn. 145, 167, 827 A.2d 671 (2003).

Here, the defendant's argument that a substantial amount of protected speech would be criminalized is without merit. Specifically, the defendant has failed to note that § 53a-151 (a) is not a strict liability offense. See *State* v. *Cavallo*, supra, 200 Conn. 668–70. Rather, § 53a-151 requires that a defendant intend that her conduct directly cause a particular witness to "testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding." General Statutes § 53a-151 (a). Consequently, members of the public have no basis for concern that they might be subject to prosecution when their statements unintentionally cause a witness to "testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding." General Statutes § 53a-151 (a). For those reasons, we cannot conclude that § 53a-151 criminalizes protected speech. The statute, therefore, is not unconstitutionally overbroad.

### III

The defendant next claims that the court improperly instructed the jury on the crime of tampering with a witness. Specifically, the defendant claims that the court improperly refused to apply the "judicial gloss" from *State* v. *Cavallo*, supra, 200 Conn. 668. We do not agree.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim.

In its amended long form information, the state alleged that the defendant "did attempt to induce a witness to absent herself from any official proceeding . . . ." In her requested supplemental jury instructions, the defendant asked the court to use language based on *State* v. *Cavallo*, supra, 200 Conn. 668. The defendant's supplemental jury instructions stated in relevant part: "[Section 53a-151] applies to any conduct intended to prompt a witness to testify falsely or to refrain from testifying in an official proceeding that the person believes to be pending or imminent."

The court, however, did not use the defendant's language in its jury instructions. Instead, the court instructed: "[T]he state must prove the following three elements beyond a reasonable doubt: (1) that the defendant believed that an official proceeding was pending or about to be instituted, (2) that the defendant induced or attempted to induce the witness to absent herself from any official proceeding, and (3) that the defendant intended that her conduct directly caused the witness to absent herself from the proceedings." After the court completed its jury instructions, the defendant again argued that the court should have included the language from *State* v. *Cavallo*, supra, 200 Conn. 672, which provides: "[A] defendant is guilty of tampering with a witness only if he intends that his conduct directly cause a particular witness to testify falsely or to refrain from testifying at all." Last, in her motion for a new trial, the defendant again claimed that the "court erred by failing to instruct the jury in accordance with the judicial gloss required by *State* v. *Cavallo* [supra, 664]."

We begin by setting forth our standard of review. "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its

probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Jarrett*, 82 Conn. App. 489, 493, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).

Here, the defendant argues that *Cavallo* expressly limits § 53a-151 to acts that intentionally cause a particular witness to *testify falsely or to refrain from testifying* in an official proceeding. Consequently, on the basis of the defendant's argument, inducing someone to absent himself or herself from an official proceeding would not constitute tampering with a witness. The defendant's interpretation of *Cavallo*, however, is incorrect.

In *Cavallo*, a police officer allowed a woman to accompany him in his police cruiser where the two would drink alcohol. *State* v. *Cavallo*, supra, 200 Conn. 665. After an investigation began, the police officer met with the woman and told her that if investigators questioned her, she should respond that she had never been in his police cruiser and deny any knowledge of his social use of the vehicle. Id. The issue on appeal was *not* the correct interpretation of "to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding," as contained in § 53a-151 (a). Rather, the court interpreted the meaning of the phrase in § 53a-151 (a), "induces or attempts to induce . . . ." Id., 668. Specifically, the court was asked to determine if intent was required

under the statute. In concluding that "induces or attempts to induce" requires intent, the court stated that the "statute applies to any conduct that is intended to prompt a witness to testify falsely or to refrain from testifying in an official proceeding that the perpetrator believes to be pending or imminent." Id.

Our Supreme Court in *Cavallo* did not intend to rewrite the statute by limiting its applicability to situations in which the defendant induces someone to "testify falsely or to refrain from testifying . . . ." Id. It was addressing only the issue of intent raised on appeal in the context of the facts presented where the defendant asked the witness to testify falsely. Section 53a-151 (a) clearly forbids more than inducing a witness to "testify falsely or to refrain from testifying . . . ." Id. It also forbids inducing someone to "elude legal process summoning him to testify or absent himself from any official proceeding." General Statutes § 53a-151 (a). We therefore cannot conclude that our Supreme Court intended not to criminalize the inducement of a person to elude legal process or to absent herself from an official proceeding.

Here, the court instructed the jury that to find the defendant guilty of tampering with a witness, it must conclude "that the defendant induced or attempted to induce the witness to absent herself from any official proceeding, and . . . that the defendant intended that her conduct directly caused the witness to absent herself from the proceedings." Such instructions comport with the interpretation of § 53a-151 set forth in *Cavallo*. The court merely instructed on the part of the statute applicable to this case on the basis of the state's requested charge. To instruct the jury on testifying falsely or refraining from testifying as contained in *Cavallo* would be of no value. For those reasons, we cannot conclude that it is reasonably possible that the court's instruction misled the jury.

## IV

The defendant next claims that the court improperly admitted evidence of the sexual assault charges against her brother, including charges involving a complainant other than Marta E. Specifically, the defendant argues that the evidence was irrelevant and that its probative value was outweighed by its prejudicial effect. We do not agree.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. On July 25, 2002, the defendant filed a motion in limine, seeking to preclude the state from referencing the "underlying sexual assault charges pending against the defendant's brother, Aaron Bennett." The court denied the motion on July 30, 2002, because of its relevancy to the issue of motive and to the existence of an official proceeding, as required by § 53a-151.

On July 30, 2002, Marta E. testified that in the summer of 1999, Aaron Bennett sexually assaulted her and that she reported it to the Hartford police department, which arrested him shortly thereafter. Ann Velazco, an inspector in the office of the chief state's attorney, testified about the charges against Aaron Bennett. The defendant objected and sought a mistrial. The court disagreed with the defendant and allowed Velazco to testify that Aaron Bennett had been charged with "aggravated sexual assault in the first degree, unlawful restraint, threatening and sexual assault in the first degree." After Velazco testified, the court gave the jury a limiting instruction regarding her testimony.[10]

---

[10] The court instructed the jury: "[T]he evidence of the charges pending against Aaron Bennett were relevant to the extent they might affect a motive with regard to the defendant and with regard to the pendency of an official proceeding, which is one of the elements of the charge of tampering with a witness. . . . [T]he nature of the charges do not reflect in any way other than that that may reflect—in any way on the defendant for those limited purposes. [The defendant] is not charged in any way with regard to any charges of sexual assault or anything like that, and they don't relate directly to her."

During cross-examination of the defendant, the state sought to question her about another sexual assault case against her brother, which had been brought by a different complainant. The defendant objected to the admission of that testimony.[11] The court disagreed and allowed the state to ask the defendant about that other case, and if the defendant had a conversation with the other victim and introduced herself as Mary, the same name she used with Marta E. The court noted that this evidence was relevant to proving the defendant's motive and common plan or scheme. The defendant, however, denied having knowledge about that other case and denied ever having contacted the other victim.[12]

We begin by setting forth our standard of review. "It is well established that a trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Spiegelmann*, 81 Conn. App. 441, 448, 840 A.2d 69, cert. denied, 268 Conn. 921, 846 A.2d 882 (2004).

A

The defendant first argues that the evidence of the sexual assault charges against her brother, including

[11] The defendant renewed her objection to the admission of this testimony as well as to the testimony of Marta E. in the defendant's motion for a new trial, which the court denied on October 3, 2002.

[12] The court gave the jury the following limiting instruction with regard to the testimony: "[T]he two separate cases against [Aaron] Bennett relate only and directly to this case on the issue of whether or not there was an official proceeding pending, and whether or not Marta E., in this case, was a witness in that case, that would relate to the charge of tampering with a witness. To the extent that you're hearing other issues about those cases, it's not directly relevant, it does not reflect directly on whether or not—on the charges in this case."

those brought by a complainant other than Marta E., was irrelevant.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence." (Internal quotation marks omitted.) *State* v. *Peeler*, 267 Conn. 611, 634–35, 841 A.2d 181 (2004).

Here, the evidence of the sexual assault charges involving Marta E. concerned circumstances from which the jury could reasonably infer the defendant's motive and, thus, her intent. Specifically, the evidence was relevant to proving the defendant's motive to prevent her brother's conviction. Furthermore, the evidence was relevant to proving the pendency of an official proceeding, which is an element of the crime under § 53a-151 (a). We therefore cannot conclude that the court abused its discretion in finding that the evidence of the sexual assault charges involving Marta E. was relevant.

We also conclude that the court did not improperly determine that the evidence of the sexual assault charges involving a complainant other than Marta E. was relevant to proving the existence of a common plan or scheme. Despite our general rule barring evidence of prior misconduct, such evidence is admissible to show a common plan or scheme. Conn. Code Evid. § 4-5 (b). The evidence presented here clearly fell within that exception because the court allowed it only on the basis of its relevance to proving the existence of the defendant's common plan, namely, her plan to prevent her brother from going to jail by approaching his victims while using a false name and offering them something in exchange for their assistance in preventing his conviction. For those reasons, we cannot conclude that

the court abused its discretion in determining that the evidence was relevant to prove a common plan or scheme.

## B

Next, the defendant argues that the court improperly concluded that the probative value of the evidence outweighed any prejudicial effect. We do not agree.

"[E]vidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Pare*, 75 Conn. App. 474, 481, 816 A.2d 657, cert. denied, 263 Conn. 924, 823 A.2d 1216 (2003).

Although the evidence of the sexual assault charges against the defendant's brother, including those involving a complainant other than Marta E., was adverse to the defendant's case, we cannot conclude that the court abused its discretion in determining that it did not create undue prejudice. As discussed, the evidence clearly was relevant to the issue of motive, to whether there was an official proceeding and to the existence of the defendant's common plan or scheme. Furthermore, the court minimized any prejudice by instructing the jury to limit the use of the evidence for the purpose for which it was introduced by the state. For those reasons, we conclude that the court did not abuse its discretion in admitting evidence of the sexual assault charges against the defendant's brother, including those involving a complainant other than Marta E.[13]

---

[13] The defendant also claims that the court improperly delayed its ruling on her motion in limine seeking to exclude the evidence. Specifically, the

## V

Last, the defendant claims that the court improperly allowed the complainant to testify as a witness under a "cloak of anonymity." Specifically, the defendant argues that General Statutes § 54-86e is inapplicable, and, therefore, the court's refusal to disclose the complainant's full name amounted to a violation of her constitutional right to an open and public trial.[14] We do not agree.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. On July 24, 2002, the state requested that pursuant to § 54-86e, the full name of the victim not be disclosed in open court because she was a victim of a sexual assault. Instead, the state requested that her full name and address be marked on a piece of paper and offered as an exhibit. The court granted the state's request and marked the piece of paper as an exhibit.

On July 29, 2002, the defendant filed a motion in limine, arguing that § 54-86e did not apply and that not to disclose the victim's name implicated the defendant's constitutional right to an open and public trial. On the same day, the court denied the defendant's motion and concluded that there existed an appropriate basis for following the rape shield laws, which includes the need to protect the victim's personal privacy, to shield her from unnecessary harassment and embarrassment in

defendant argues that the admission of the evidence prejudiced her because the court made its ruling after the jury was selected, thereby depriving her of an opportunity to question potential jurors on their views of sex crimes and sexual assault victims. The defendant's claim, however, must fail because (1) Practice Book § 42-15 permits the court to reserve its decision on a motion in limine until a later time in the proceeding and (2) any resulting prejudice was minimized by the court's jury instruction: "You may not allow your views about that type of offense to interfere or influence your fair and thorough review of the evidence in this case."

[14] We note that the defendant is not challenging the constitutionality of § 54-86e itself.

court, and to encourage the disclosure of sexual assaults.

During trial, the victim was referred to by using only her first name, Marta, and the first initial of her last name, E. The court instructed the jury on that issue: "Throughout this trial, we have avoided using Marta E.'s full name on the record except in certain documents. That's because Connecticut law allows certain witnesses' names not to be disclosed in public records. You, however, have her name, and you are to draw no inferences or conclusions about this case or about the defendant's guilt because we did not mention on the open court record her last name. This was done pursuant to statute." On August 6, 2002, in her motion for a new trial, the defendant again objected to keeping the name of Marta E. confidential. The court denied the motion on October 3, 2002.

The defendant's claim requires this court to interpret § 54-86e. " 'Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result.' . . . *Regency Savings Bank* v. *Westmark Partners*, 70 Conn. App. 341, 344–45, 798 A.2d 476 (2002). Furthermore, 'we will . . . in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning.' . . . *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003)." (Emphasis in original.) *State* v. *Punsalan*, 81 Conn. App.

84, 89–90, 838 A.2d 232, cert. denied, 268 Conn. 905, 845 A.2d 408 (2004).

Section 54-86e provides in relevant part: "The name and address of the victim of a sexual assault under section . . . 53a-70a . . . shall be confidential and shall be disclosed only upon order of the Superior Court, except that . . . such information shall be available to the accused in the same manner and time as such information is available to persons accused of other criminal offenses . . . ."

The defendant argues that § 54-86e is inapplicable to the situation here because this is a case involving tampering with a witness and not a sexual assault case. Because we must follow the plain meaning of the statute, however, we see no merit in the defendant's argument. Section 54-86e provides that such victims shall not have their names and addresses disclosed unless it is ordered by the Superior Court. The statute does not state that this information shall remain confidential only for the case in which the sexual assault charge originally was prosecuted.

The purpose underlying § 54-86e is clear. It aims to protect victims of sexual assault by reducing unnecessary harassment and embarrassment in court, and by encouraging the disclosure of sexual assaults. To conclude that § 54-86e is applicable in cases of tampering with a witness in which the underlying proceeding is a sexual assault case is within the spirit and intent of § 54-86e. As a result, Marta E. was entitled to the same protections in this case as she would be afforded in a sexual assault trial. We therefore conclude that § 54-86e was applicable in the present situation and, therefore, that the court did not improperly refuse to allow the use of the full name of Marta E. at trial. Because § 54-86e was applicable, we conclude that the defen-

dant's right to an open and public trial was not violated.[15]

The judgment is affirmed.

In this opinion the other judges concurred.

[15] We conclude that the defendant's right to an open and public trial was not violated because the defendant based her argument in support thereof solely on the contention that General Statutes § 54-86e did not apply to the facts presented. See footnote 14.