**UNITED STATES of America,**
**Appellee,**

v.

**Alan SIMMONS, Defendant–Appellant.**

**Docket No. 02–1172.**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 5, 2003.

Decided: Sept. 3, 2003.

David V. Kirby, First Assistant United States Attorney (Peter Hall, United States Attorney, and Gregory L. Waples, Assistant United States Attorney, on the brief), Burlington, Vermont, on behalf of the Appellee.

Elizabeth D. Mann, Assistant Federal Public Defender, Burlington, Vermont, on behalf of Defendant–Appellant.

Before: JACOBS and POOLER, Circuit Judges, and GLEESON, District Judge.[1]

GLEESON, United States District Judge.

Alan Simmons appeals from a judgment convicting him on his pleas of guilty to knowingly transporting a minor in foreign commerce for the purpose of engaging in illegal sexual conduct (Count One), and to using a minor to engage in sexually explicit conduct for the purpose of producing a videotape of the conduct (Count Two), in violation of 18 U.S.C. § 2423(a) and 18 U.S.C. § 2251(a), respectively. Simmons was sentenced principally to consecutive prison terms totaling 168 months, to be followed by three years of supervised release. He makes two arguments on appeal: (1) that the district court erred in upwardly departing to Criminal History Category IV based on Simmons's record of

1. The Honorable John Gleeson of the United States District Court for the Eastern District of New York, sitting by designation.

convictions in Canada; and (2) that the district court erred by imposing, as a condition of supervised release, a prohibition on the possession or viewing of any "pornographic material."

Finding no merit in either of Simmons's arguments on appeal, we affirm.

## FACTS

### A. *The Offenses*

In December of 1992, Simmons, who was then 41 years old, took a ski trip from his home in Ontario, Canada to Jay Peak in Vermont. He brought along his two sons, who were 9 and 12 years old, and 15–year–old B.B., whom Simmons had coached in a girls' hockey league and whose mother Simmons had dated. Following an afternoon of skiing, the four ate dinner and retired to a hotel room to watch videos. Simmons prepared soft drinks for the children, who did not wake up until approximately noon the next day. This was unusual for B.B., who was an early riser. Although she noticed that she was tired, she did not suspect anything out of the ordinary.

Four years later, while executing a search warrant at Simmons's home in connection with an alcohol and tobacco smuggling case, Canadian authorities seized a 38–minute videotape of Simmons sexually abusing an apparently unconscious adolescent female. The tape begins with the female lying prone on a bed, her sweatshirt pulled up to expose her breasts. Then Simmons is seen pulling down the girl's sweatpants and manipulating her left leg several times to expose her genital area to the camera. The camera focuses in on the victim's genital area, which Simmons can be seen touching with his fingers, his lips and his penis. The videotape concludes with Simmons masturbating and ejaculating onto the victim's pubic hair. Throughout the videotape, the victim appears to be unconscious.

Subsequent investigation revealed that the videotape was made in the Vermont hotel room in 1992, and that the victim was B.B. Another videotape seized by the Canadian authorities from Simmons's home showed him engaging in various sexual acts with seemingly unconscious adult females. Several women who .dated Simmons reported that they suffered blackouts after consuming drinks he prepared, and woke up hours later in sexually compromising positions.

On December 19, 1996, a federal grand jury in Vermont returned an indictment charging Simmons with transporting a minor in foreign commerce for the purpose of engaging in illegal sexual activity, in violation of 18 U.S.C. § 2423, and with sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). Simmons pled guilty to both counts on September 24, 2001, and he was sentenced on March 5, 2002.

### B. *The Sentencing*

#### 1. *The Criminal History Calculation and Upward Departure*

The presentence report ("PSR") placed Simmons in Criminal History Category I despite his many prior convictions because they were all obtained in Canadian courts. *See* U.S.S.G. § 4A1.2(h). According to the PSR, Simmons's criminal history consisted of the following convictions and sentences:

| Date of Conviction | Offense | Sentence |
| --- | --- | --- |
| 7/29/71 | Theft over $50 | 10 days |
| 8/24/71 | Possession of Stolen Property | 3 months |

| | | |
|---|---|---|
| 6/14/72 | Breaking and Entering | 6 months |
| 4/15/85 | Possession of Unregistered Restricted Weapon | $400 fine or 30 days |
| 4/17/85 | Breach of Recognizance | 45 days |
| 6/26/85 | Assault | 18 months |
| | Extortion | 18 months Concurrent |
| 12/20/96 | Uttering Threats | 15 days |
| 5/7/97 | Conspiracy of Unlawful Possession of Imported Goods | 3 months |
| 6/17/97 | Possession of Child Pornography | 2 years |
| | Sexual Assault | 1 year Consecutive |
| | Possession of Prohibited Weapon | 6 months Concurrent |
| | Careless Storage of Prohibited Weapon | 1 month Concurrent |

In its presentencing memorandum, the government sought an upward departure to Criminal History Category V, asserting that category to be the one Simmons would have been in had his convictions occurred in the United States. Simmons countered that there was no justification for an upward departure, and even if there were, a correct tally of points based on the foreign convictions would place Simmons in Criminal History Category III.

At the sentencing hearing on March 5, 2002, the district court first observed as follows: "As I understand it from the circuit what I have to do is go through each category and consider whether that category adequately reflects the seriousness of the defendant's record." (Tr. at 51.)[2] It further observed "that the convictions of the defendant in Canada are very similar to convictions here in this country." (*Id.*) The appropriate criminal history category for sentencing, the court concluded, should be the category that would apply if the foreign convictions had occurred in the United States.

Addressing each of Simmons's convictions separately, the district court chose not to consider the first three, which oc-

curred in 1971 and 1972, because they were too old and would not be counted even if they had occurred in the United States. *See* U.S.S.G. § 4A1.2(e). The court accorded one criminal history point to the April 1985 conviction for possessing an unregistered restricted weapon. It declined to consider the 1985 conviction for "Breach of Recognizance." Because there was no background information available for that charge, Simmons was given the "benefit of the doubt" as to its underlying facts. (Tr. at 53.)

The June 1985 convictions for assault and extortion, for which Simmons received concurrent 18–month sentences, were counted by the district court despite the absence of explanatory information about them in the PSR. Reasoning that "these seem to be offenses for which it's not difficult to figure out what happened" (*Id.* at 54), the court accorded a total of three criminal history points to them.

The court added one point for the 1996 conviction for uttering threats and two points for the May 1997 conviction for unlawful possession of imported goods. As for the 1997 conviction for possession of child pornography, no points were allocat-

**2.** "Tr." refers to the transcript of the sentenc- ing hearing held on March 5, 2002.

ed because it was based on the same video-tape on which Simmons's abuse of B.B. was recorded. The court did count, however, the 1997 convictions for sexual assault and possession of a prohibited weapon, according a total of two points to them in calculating the departure.

Because the total points allocated to the Canadian convictions was nine, the district court departed upward under U.S.S.G. § 4A1.3 to the corresponding category, Criminal History Category IV. It summarized its methodology as follows: "[The case law] says I'm supposed to pause at each category to consider which category reflects the seriousness of his record. But it seems to me what I've done is gone through and pointed out the various offenses ... which ... would and do reflect the seriousness of the defendant's record . . . ." (Tr. at 56.)

With a total offense level of 32 and an upward departure to Criminal History Category IV, the applicable sentencing range was 168–210 months. As stated above, Simmons was sentenced to consecutive terms of imprisonment totaling 168 months.

2. *The Special Condition Prohibiting the Possession or Viewing of Pornography*

The district court imposed a three-year term of supervised release to follow the 168–month prison term, with the following special condition: "The defendant shall not possess or view any pornographic material, including videotapes, films, magazines, books and photographs, nor shall he subscribe to 'adult-only' movie channels." (J., Sheet 3C—Supervised Release.) [3]

---

**3.** As pronounced orally, the special condition did not explicitly enumerate films or photographs. (Tr. at 64.) However, those items are clearly embraced by the category "porno-

## DISCUSSION

### A. *The Upward Departure*

Section 4A1.1 of the United States Sentencing Guidelines is a sentencing judge's starting point for calculating the criminal history category of a defendant. The section prescribes, *inter alia,* the allocation of criminal history points to "each prior sentence," with the number of points per sentence depending on the length of the prison term, if any, imposed as part of the sentence. U.S.S.G. § 4A1.1(a), (b), (c). The total number of criminal history points places the defendant in one of the six criminal history categories that comprise the horizontal axis of the Guidelines' sentencing table. U.S.S.G., Ch. 5, Pt. A.

Not all of a defendant's prior sentences, however, constitute a "prior sentence" under the Guidelines. For purposes of tallying criminal history points, sentences resulting from military offenses, tribal court convictions and foreign sentences are not counted. U.S.S.G. § 4A1.2. The exclusion of such sentences creates the obvious risk that a defendant's criminal history category will fail to reflect the seriousness of his or her criminal history. Thus, the guideline provision excluding foreign sentences explicitly adds that such sentences may be considered as a ground for departure under U.S.S.G. § 4A1.3. U.S.S.G. § 4A1.2(h). Section 4A1.3 authorizes a departure (upward or downward) "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes . . . ." The section specifically identifies prior sentences not used in calculating the de-

---

graphic material," and Simmons does not base his appellate challenge on this variance between the oral pronouncement and the written judgment.

fendant's criminal history category, including foreign sentences, as the type of information on which a departure might be based.

Simmons contends that the district court erred by upwardly departing to Criminal History Category IV. Specifically, he contends that it was an error to consider the 1985 convictions for assault and extortion in calculating the degree of the upward departure because there was no information available about either offense. According to Simmons, the district court violated the admonition in the commentary to § 4A1.3 that criminal history departures are authorized only "in the limited circumstances *where reliable information* indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3, Commentary at 330 (Nov.2002) (emphasis added). We disagree.

■ An appeals court reviews *de novo* whether a particular factor is a permissible basis for a departure. *United States v. Karro*, 257 F.3d 112, 120 (2d Cir.2001) (citing *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). The inadequacy of a defendant's criminal history category is not merely a permissible basis for an upward departure, it is what *Koon* described as an "encouraged" basis for such a departure. *See* 518 U.S. at 94–95, 116 S.Ct. 2035.

At least until recently, it was the law in this circuit that the decision to depart (as distinct from whether the ground cited is a permissible one) was reviewed for abuse of discretion. *United States v. Carpenter*, 320 F.3d 334, 342 (2d Cir.2003). Congress recently changed that in The Prosecutorial Remedies and Other Tools To End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108–21, § 401(d), 117 Stat. 650, 670 (2003), codified

at 18 U.S.C. § 3742(e)(3)(B)(iii), which mandates *de novo* review of whether a departure is "justified by the facts of the case." The PROTECT Act is silent on its applicability to appeals that were pending when it was enacted. However, we need not address that issue here, as we would affirm the departure in this case even under the more stringent standard.

■ A sentencing court considering an upward departure under § 4A1.3 is not required by our cases to pause at each category above the applicable one to consider whether the higher category adequately reflects the seriousness of the defendant's record. While such an obligation was suggested by *United States v. Tropiano*, 50 F.3d 157, 162 (2d Cir.1995); *see also United States v. Khalil*, 214 F.3d 111, 123 (2d Cir.2000) (stating in *dicta* that *Tropiano* required such a sequential method), we have made it clear on other occasions that, as long as the reasons for such a departure are fully explained, "a mechanistic, step-by-step procedure is not required." *United States v. Kassar*, 47 F.3d 562, 566 (2d Cir.1995), *abrogated on other grounds by Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *see also United States v. Franklyn*, 157 F.3d 90, 100 (2d Cir.1998). Indeed, this case illustrates the inappropriateness of requiring the step-by-step analysis. The explanation for the departure was that the seriousness of Simmons's past criminal conduct was best measured by calculating criminal history points for his Canada convictions as though they were United States convictions. This was an entirely sensible explanation. Indeed, though Simmons contends there was insufficient information to consider two of the 1985 convictions, he does not challenge the district court's methodology for an upward departure based on foreign convic-

tions. That methodology hinged on the total number of criminal history points attributed to the Canada convictions, and it resulted in a departure to Criminal History Category IV. In light of the court's explanation, it would be senseless formalism to pause at Criminal History Categories II and III to consider whether they would have adequately reflected the seriousness of Simmons's criminal past. Thus, while it remains true that a sentencing court can meet its obligation to explain an upward departure by proceeding sequentially from the applicable category through each higher category until it settles on the one that fits the defendant, such a step-by-step inquiry is not required in every case.

■ The requirement in § 4A1.3, which is reiterated in its accompanying commentary, that a departure be based on "reliable information" was not disregarded in this case when the district court considered the 1985 convictions and sentences for assault and extortion. It is true that the background information for those convictions was unavailable due to the passage of time. On the other hand, the nature of those offenses is not obscure. As the district court stated, "these seem to be offenses for which it's not difficult to figure out what happened." (Tr. at 54.) Indeed, where it *was* difficult to figure out the nature of a prior conviction, as was true with respect to the 1985 "Breach of Recognizance" conviction, Simmons was given the benefit of the doubt, and the sentence was not counted. Moreover, the foreign convictions at issue here occurred in Canada, and were considered by a district court sitting in Vermont. The court expressly stated that Canada convictions "are very similar to convictions here in this country" (Tr. at 51), and Simmons does not suggest otherwise. Simmons's argument, if accepted, would result in a *per se* rule that

foreign convictions could never form the basis for a § 4A1.3 departure if only the name of the offense of conviction and the length of sentence imposed were available. We decline to adopt such a rule. We acknowledge that some foreign convictions, particularly those occurring in nations with less familiar criminal justice systems than the one at issue here, may require further inquiry and development before they may properly support an upward departure. But we find no error in the failure to do so here.

Finally, we take comfort in the knowledge that if Simmons's convictions for assault and extortion were something other than what they seem, *i.e.,* something other than an assault and an extortion, he was in the best position to know it. Implicit in his argument on appeal is that "the label ascribed to the conduct" may have led the sentencing court to an erroneous belief that Simmons engaged in violent conduct. (Appellant's Br. at 10.) We see no reason in this case why, if that were true, Simmons's counsel could not have pointed that out to the district court.

### B. *The Special Condition*

Simmons contends that the imposition of the special condition prohibiting his possession or viewing of pornographic material was an abuse of discretion for two reasons. First, he asserts that the prohibition does not provide adequate notice of what is prohibited. Second, Simmons asserts that the condition is neither reasonably related to a legitimate sentencing purpose nor sufficiently tailored to serve only such a legitimate purpose. We follow our recent decision in *United States v. Cabot,* 325 F.3d 384, 385 (2d Cir.2003), and conclude, accordingly, that it was not error to impose this condition. We also use this case as an opportunity to further explain our reasoning in *Cabot.*

 Simmons did not object at sentencing to the imposition of the special condition of supervised release. Generally, such a failure to object results in the application of plain error review, "which precludes us from correcting an error unless it affects a defendant's 'substantial rights.'"[4] *United States v. Keigue*, 318 F.3d 437, 441 (2d Cir.2003) (quoting Fed. R.Crim.P. 52(b)); *United States v. Zillgitt*, 286 F.3d 128, 138 (2d Cir.2002) (reviewing sentencing error first raised on appeal for plain error); *United States v. Miller*, 263 F.3d at 4 (same). However, in *United States v. Sofsky*, we stated that "in the sentencing context there are circumstances that permit us to relax the otherwise rigorous standards of plain error review to correct sentencing errors." 287 F.3d 122, 125 (2d Cir.2002), *cert. denied*, 537 U.S. 1167, 123 S.Ct. 981, 154 L.Ed.2d 907 (2003). In *Sofsky*, the challenged condition of supervised release was not recommended in the PSR, and the defendant had no prior knowledge that it would be imposed. *Id.* "Both because the alleged error relate[d] only to sentencing and because Sofsky lacked prior notice," we found a departure from the strict application of plain error review warranted. *Id.* at 125–26; *cf. United States v. Gordon*, 291 F.3d 181, 191 (2d Cir.2002) (holding that *Sofsky* did not apply because the government had notice in the presentence report of the court's decision to group the defendant's tax evasion and mail fraud counts under U.S.S.G. § 3D1.2(c)). Both justifications are present in this case. Simmons's challenge is limited to sentencing and he had no prior notice of the special condition that was imposed.[5] Accordingly, while plain error review is required in this case, the circumstances permit us to "entertain [t]his challenge without insisting on strict compliance with the rigorous standards of Rule 52(b)." *Sofsky*, 287 F.3d at 125–26.

 Although district courts enjoy broad discretion in imposing conditions of supervised release, that discretion is not unlimited. *United States v. Bello*, 310 F.3d 56, 59 (2d Cir.2002); *United States v. A–Abras, Inc.*, 185 F.3d 26, 32 (2d Cir. 1999); *United States v. Germosen*, 139 F.3d 120, 131 (2d Cir.1998). Special conditions of supervised release must be reasonably related to: "(i) the nature and circumstances of the offense and the history and characteristics of the defendant, and (ii) the purposes of sentencing, including the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed training or treatment." *Germosen*, 139 F.3d at 131 (citing U.S.S.G. § 5D1.3(b), 18 U.S.C. § 3553(a)(2), and 18 U.S.C. § 3583(d)). However, the condition imposed may "'involve[ ] no greater deprivation of liberty than is reasonably necessary for the purposes of sentencing.'" *Id.* (quoting 18 U.S.C. § 3583(d)(2)); *A–Abras*, 185 F.3d at 31 (same). Furthermore, the condition must be consistent with any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d)(3); *Sofsky*, 287 F.3d at 126.

 Simmons argues that the prohibition on "pornographic material" imposed as a condition of his supervised release

**4.** "For there to be 'plain error,' there must be (1) an error that (2) is 'plain' and (3) 'affects substantial rights'; if these elements are satisfied, then the court may correct the error, but only if (4) the error 'seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings.'" *United States v. Mil-* *ler*, 263 F.3d 1, 4 (2d Cir.2001) (quoting *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

**5.** Our review of the PSR reveals no recommendation that such a condition should be imposed.

violates his right to due process, and thus was an abuse of discretion, because that term is too vague to give him notice of what conduct will constitute a violation. Due process requires that the conditions of supervised release be sufficiently clear to " 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.' " *Cabot,* 325 F.3d at 385 (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)); *see also LoFranco v. United States Parole Comm'n,* 986 F.Supp. 796, 810–11 (S.D.N.Y.1997). A statute violates due process of law if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Although a condition of supervised release applies only to the releasee, rather than to the general public, "[a] probationer [ ] has a[ ] due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *United States v. Guagliardo,* 278 F.3d 868, 872 (9th Cir. 2002); *see also Cabot,* 325 F.3d at 385; *LoFranco,* 986 F.Supp. at 811 (special condition prohibiting petitioner from associating with "outlaw motorcycle gangs" was unconstitutionally vague).

For purposes of evaluating artistic or cultural merit, the term "pornography" is notoriously elusive. In that context, determining whether material deserves the label of pornography is a subjective, standardless process, heavily influenced by the individual, social and cultural experience of the person making the determination. As we observed in *Cabot,* "[o]ne man's pornography may be another's keepsake." 325 F.3d at 385 (quoting *Giano v. Senkowski,* 54 F.3d 1050, 1056 (2d Cir.1995)). According to some, Vladamir Nabokov's novel *Lolita,* or the film adaptation of the book, or "Edouard Manet's *Le Dejeuner sur L'Herbe* is pornographic (or even some of the Calvin Klein advertisements)." *United States v. Loy,* 237 F.3d 251, 264 (3d Cir.2001). Whether Sally Mann's photographs of her three prepubescent children, sometimes nude or partially clothed, or Robert Mapplethorpe's explicit images of sexual practices, fall within the scope of pornography are matters of considerable debate.

■ However, while the lack of clarity in the term is undeniable in the unregulated sphere of cultural debate, it is, as we suggested in *Cabot,* significantly eliminated in the context of federal criminal law. 325 F.3d at 385. In fact, federal law provides considerable guidance as to the meaning of the term pornography in 18 U.S.C. § 2256, which defines terms used in the statute both Simmons and Cabot were convicted of violating.[6]

In upholding the prohibition on pornographic matter imposed as a condition of supervised release in *Cabot,* we explicitly relied on the fact that the statutory scheme under which Cabot was convicted defines the term "child *pornography.*" 325 F.3d at 385 (emphasis in original). The statute provides, in pertinent part:

(8) "child pornography" means *any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic,*

---

**6.** Both Simmons and Cabot pled guilty to using or persuading a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a).

*mechanical, or other means, of sexually explicit conduct,* where—

(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct;

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or

(D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct.

18 U.S.C. § 2256(8) (emphasis added). In defining child pornography, the law first, and not surprisingly, defines the more general category of pornography. Subsections (A) through (D) serve to narrow the scope of that definition to child pornography specifically. When the references to minors are omitted, what remains is the definition of the broader category of pornography: "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct." Further specificity is provided by the statute's definition of "sexually explicit conduct" as "actual or simulated—(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (B) bestiality; (C) masturbation; (D) sadistic or masochistic abuse; or (E) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2).

This definition of pornography avoids reference to subjective standards and is sufficiently specific to give adequate notice as to what conduct violates a prohibition on pornographic material. *See, e.g., United States v. Phipps,* 319 F.3d 177, 193 (5th Cir.2003) (upholding prohibition on "sexually oriented or sexually stimulating materials" on review for plain error); *United States v. Bee,* 162 F.3d 1232, 1235 (9th Cir.1998) (prohibition on possessing "sexually stimulating" material was not an abuse of discretion). While it is unnecessary for district courts imposing such a prohibition to explicitly reference this statutory definition of pornography, we urge them to do so in future cases, particularly since in other contexts the term is inherently vague.

Simmons also argues that this special condition is neither reasonably related to a legitimate sentencing purpose nor sufficiently tailored to serve only such a legitimate purpose. We disagree. While incarcerated in Canada, Simmons refused to participate in the Sexual Behavior Clinic, and was evaluated there as "at high risk for general and violent recidivism." (PSR ¶ 37.) Given that Simmons often videotaped his sexual attacks upon his victims, it was reasonable for Judge Murtha to conclude that there was a connection between Simmons's viewing and possessing sexually explicit material and his criminal behavior. The nature and circumstances of Simmons's crimes also support our conclusion that the special condition imposed is not overly broad. Among the videos seized by Canadian authorities from Simmons's home were videos of him engaging in various sexual acts with seemingly unconscious adult women. In July of 1997, Simmons pled guilty to sexual assault on one of those women in Ontario Provincial Court. (PSR ¶ 11.) Clearly, Simmons poses a potential threat not only to minor females, but to adults as well. Accordingly, it was reasonable for Judge Murtha to impose a prohibition on

pornography generally, not only on child pornography.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.