STATE OF CONNECTICUT *v.* ROBERT
TROY STEPHENS
(SC 18702)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Vertefeuille, Js.

Argued March 21—officially released August 2, 2011

*Stephanie L. Evans*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, was *Scott J. Murphy*, state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Robert Troy Stephens, appeals from the judgment of the trial court revoking his probation and sentencing him to forty-two months incarceration and eighteen months special parole. The trial court determined that the defendant, who had been placed on probation following his conviction of possession of child pornography in violation of General Statutes (Rev. to 2003) § 53a-196d,[1] had violated a special condition of his probation that prohibited him from possessing, or subscribing to, any "sexually stimulating material deemed inappropriate by a [p]robation [o]ffi-

---

[1] Hereinafter, all references to § 53a-196d are to the 2003 revision.

cer . . . ." On appeal, the defendant claims that the special condition was unconstitutionally overbroad and vague on its face and unconstitutionally vague as applied to him, and that the evidence was insufficient to support the trial court's finding that he had violated the condition. The state responds that the defendant's claims are not of constitutional magnitude and that, to the extent the court determines that they are, the special condition was not unconstitutionally overbroad or vague, either on its face or as applied to the defendant. The state also argues that the evidence was sufficient to support the trial court's finding that the defendant had violated the special condition. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history relevant to our resolution of this appeal. On March 6, 2006, the defendant pleaded guilty under the *Alford* doctrine[2] to two counts of possession of child pornography in violation of § 53a-196d on the basis of evidence found on his home computer. The evidence included fifteen files depicting minor female children engaged in sexual acts or in poses in which their genitalia appear to have been the focus of the image, and twenty files of minor female children in poses that would appeal to the prurient interest. On May 8, 2006, the trial court sentenced the defendant to five years incarceration, execution suspended, and five years probation on each count, with the sentences to run concurrently. At the time of sentencing, the trial court also imposed on the defendant seven special conditions of probation and several special sex offender conditions. One of the seven special conditions was that the defendant's access to any computer must be approved by the office of adult probation. Among the special sex offender conditions were that the defendant (1) not possess, or subscribe to, any sexually stimulating mate-

---

[2] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

rial deemed inappropriate by a probation officer, (2) not possess a camera, DVD player, camcorder, video-cassette recorder or other similar equipment without the approval of a probation officer, and (3) submit to an examination and search of his computer or other similar equipment to verify that it was not being utilized in violation of his probation or treatment.

On March 20, 2008, the trial court issued an arrest warrant[3] for the defendant's alleged violation of his probation, supported by an affidavit signed by the defendant's probation officer, Denise Martin. In the affidavit, Martin attested that the defendant had violated the three foregoing special sex offender conditions because he allegedly had visited dating websites, tried to sell or trade an Apple computer online, and possessed nude photographs of his former girlfriend. The photographs included sexually explicit images of a nude woman from the waist down with her legs spread apart, close-up photographs of her genitalia and pubic area, and several photographs depicting her breasts in the background. After the court held a competency hearing and found the defendant competent to stand trial, it conducted a revocation hearing in April, 2009. Following the adjudicatory phase of the hearing to determine whether the defendant had violated his probation, the trial court found by a fair preponderance of the evidence that the defendant had been advised of the conditions of his probation, had known of the special condition that he was not allowed to possess sexually stimulating material deemed inappropriate by a probation officer and, without the permission of a probation officer, had possessed sexually explicit photographs of his former girlfriend on his home computer while he was on proba-

[3] The arrest warrant resulted from a complaint that the defendant's former girlfriend had filed, in which she alleged that the defendant was in possession of nude photographs of her on a laptop computer and that he had threatened to send these photographs to her coworker.

tion. The court noted that there appeared to be no policy as to what is and what is not sexually stimulating material but that "[a] probation policy does not need to exist to determine that these photographs . . . are very sexual in nature, depicting a female private part in a very sensual, sexual manner . . . ." The court stated that, although the defendant had maintained that he had deleted any such photographs that had been on his home computer prior to being placed on probation, a report by the state police forensic laboratory following an examination of the computer's hard drive in June, 2007, indicated that the computer contained nude photographs of the defendant's former girlfriend and that they had been accessed on April 21, 2007, and May 13, 2007, during his probation. The trial court thus concluded, inter alia, that the state had met its burden of proving that the defendant had violated the special sex offender condition that he not possess any sexually stimulating material deemed inappropriate by a probation officer.

At the dispositional phase of the hearing, the court considered "whether the benefits of probation continue[d] to exist" and whether the defendant would be a "good risk" if he were to continue on probation. The court observed that the defendant had not complied with the conditions of his probation and had not been totally forthright with his probation officer when he said that he had deleted any nude photographs of his former girlfriend that had been on his computer prior to his probation. The court further observed that the photographs were sexually stimulating in nature and extremely disturbing, offensive and demeaning to women, and, in light of the nature of the underlying offenses of possessing child pornography, the court had concerns relating to public safety if the defendant were to remain on probation. Accordingly, the court found that, to a large extent, the benefits of probation did not

exist in the defendant's case. The court thus reopened the sentence and ordered the defendant to serve forty-two months incarceration and eighteen months special parole on each count, with the sentences to run concurrently. This appeal followed.[4]

The defendant seeks review of his unpreserved claims under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. See Practice Book § 60-5. Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 239–40. Under the plain error doctrine, "[t]he court may in the interests of justice notice plain error not brought to the attention of the trial court."[5] Practice Book § 60-5.

---

[4] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] The plain error doctrine "is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that [an appellate] court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judg-

We conclude that, although the record is adequate for review and the defendant's claims are of constitutional magnitude, they fail under the third prong of *Golding* because the alleged constitutional violations do not clearly exist. We further conclude that the defendant is not entitled to the extraordinary relief available under the plain error doctrine.

I

## OVERBREADTH CLAIM

The defendant first claims that the special condition was unconstitutionally overbroad on its face and thus unduly impinged on his constitutional right to privacy because "[a] substantial amount of private physical intimacy shared between [consenting] adults involved in marital or close intimate relationships are at risk of being criminalized . . . ." He contends that, although "viewing nude photographs of strangers in a magazine, or online, may constitute inappropriate sexually stimulating material to a probationer with sex offender conditions of probation, the criminalization of possessing nude photographs of one's spouse or adult consenting partner is inconsistent with the privacy rights afforded under the United States constitution, which prohibits making mere possession of obscene material a crime." The state responds that the overbreadth doctrine does not apply because it is generally invoked only in first amendment cases, and the defendant is not alleging a first amendment violation. The state also contends that the overbreadth doctrine does not apply because conditions of probation, unlike statutes, are not "positive mandates of general applicability that can 'sweep in' a large amount of constitutionally protected speech or conduct" but, rather, are enforced on an individual and discretionary basis like contract terms, which are not

ment under review." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009).

subject to overbreadth analysis. We agree with the state that the overbreadth doctrine does not apply in the present case.

The United States Supreme Court repeatedly has stated that overbreadth analysis is appropriate only when first amendment rights are implicated. See, e.g., *Broadrick* v. *Oklahoma*, 413 U.S. 601, 612, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) ("[T]he [c]ourt has altered its traditional rules of standing to permit—*in the [f]irst [a]mendment area*—attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. . . . Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated . . . but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from *constitutionally protected speech or expression*." [Citation omitted; emphasis added; internal quotation marks omitted.]); see also *Virginia* v. *Hicks*, 539 U.S. 113, 118, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003) ("[t]he [f]irst [a]mendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges"); *United States* v. *Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) ("we have not recognized an 'overbreadth' doctrine outside the limited context of the [f]irst [a]mendment"); *Schall* v. *Martin*, 467 U.S. 253, 268–69 n.18, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984) ("outside the limited [f]irst [a]mendment context, a criminal statute may not be attacked as overbroad"); cf. *Virginia* v. *Hicks*, supra, 124 ("[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech [such as picketing or demonstrating]"). Following this principle, Connecticut courts

likewise have recognized the overbreadth doctrine only in the context of first amendment claims. See, e.g., *State* v. *Cook*, 287 Conn. 237, 245, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008); *State* v. *DeLoreto*, 265 Conn. 145, 167, 827 A.2d 671 (2003); *Leydon* v. *Greenwich*, 257 Conn. 318, 335, 777 A.2d 552 (2001); *State* v. *Skidd*, 104 Conn. App. 46, 53, 932 A.2d 416 (2007); *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 58, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004). Accordingly, because the defendant in the present case invokes the overbreadth doctrine to examine the effect of the special condition on his constitutionally protected right to privacy and states that he is *not* alleging a violation of his first amendment rights, his claim necessarily fails under the third prong of *Golding*.[6]

## II

## VAGUENESS CLAIMS

The defendant also claims that the special condition was unconstitutionally vague on its face and as applied to him because (1) individual decisions by "consenting adults involved in marital or close intimate relationships" concerning the intimacies of their physical relationships are constitutionally protected,[7] (2) the term "sexually stimulating material" is subjective and has not been defined by the office of adult probation, by the statutory scheme or by the applicable case law,

---

[6] We thus need not reach the state's corresponding claim that the overbreadth doctrine does not apply to conditions of probation.

[7] The defendant repeatedly refers to photographs of his former girlfriend *and* his wife, and sometimes makes reference to his wife or marriage in his arguments. Although there were photographs of his wife on the defendant's computer, we agree with the state that the only photographs at issue in this case are the photographs of his former girlfriend, as those photographs were the basis for the trial court's finding of a violation of probation. We thus do not consider whether similar photographs of the defendant's wife would have been in violation of the condition because it is not the issue before this court.

unlike pornographic or obscene material, and, therefore, the condition did not provide him with fair notice as to what type of material was prohibited, (3) even if the term had been defined, the defendant would have violated the condition merely by bringing the photographs to his probation officer for approval before knowing that they were inappropriate, (4) the inherent subjectivity of the condition allowed enforcement on the basis of the personal preferences or idiosyncrasies of the probation officer and the trial court, and (5) the defendant's constitutionally protected right to privacy allowed him to possess and view nude photographs of his former girlfriend.

The state responds that (1) constitutional vagueness challenges apply to statutes and should not apply to conditions of probation, which are more like contract terms that are not subject to constitutional analysis, (2) if a vagueness analysis applies, only an as applied challenge should be considered because the defendant makes no claim of a first amendment violation, as do most claims of facial vagueness, and (3) under an as applied analysis, the defendant had sufficient notice that his conduct would violate the special condition. The state also argues that, if the defendant did not understand the special condition, he could have sought clarification from his probation officer as to whether he could possess the photographs in question. Assuming, without deciding, that conditions of probation, like statutes, can be subject to facial and as applied vagueness challenges, we conclude that the defendant's claim fails under an as applied analysis.

We begin by noting that determining whether a condition of probation is unconstitutionally vague presents a question of law over which our review is de novo. *State* v. *Knybel*, 281 Conn. 707, 713, 916 A.2d 816 (2007). In reviewing a claim that a condition of probation is unconstitutionally vague, we apply the same legal prin-

ciples that apply to the construction of a penal statute. "[A] penal statute [must] define [a] criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. . . . [This concept] embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . [T]he [most] important aspect of the vagueness doctrine is not actual notice . . . but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement. . . . Thus, [i]n order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited . . . and must not impermissibly [delegate] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. . . . Finally, [i]f the meaning of a statute can be fairly ascertained [the] statute will not be void for vagueness . . . for [i]n most English words and phrases there lurk uncertainties. . . . [T]he statute must contain some core meaning within which the defendant's actions clearly fall. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning. . . .

"For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue. . . . [T]o prevail on his claim, the defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the

statute proscribed or that he fell victim to arbitrary and discriminatory enforcement." (Citations omitted; internal quotation marks omitted.) Id., 713–14; accord *State* v. *Ortiz*, 83 Conn. App. 142, 157–58, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004).

In the present case, the defendant claims that the special condition violated his constitutionally protected right to privacy rather than his first amendment right to constitutionally protected speech. Accordingly, we restrict our examination to whether the special condition was constitutional as applied to the defendant under the particular facts of this case.[8]

In considering whether the special condition satisfied the two pronged test that it must give the defendant adequate notice and not create a threat of arbitrary and discriminatory enforcement, we are guided by *United States* v. *Cabot*, 325 F.3d 384 (2d Cir. 2003), and *United States* v. *Simmons*, 343 F.3d 72 (2d Cir. 2003). In those cases, the Second Circuit Court of Appeals held that the defendants had adequate notice of the meaning of "pornographic matter" and "pornographic material," respectively, as those terms were used in their conditions of probation, because the statutory scheme under which they had pleaded guilty[9] provided an extensive

---

[8] We note that a determination that the condition is constitutional as applied to the defendant renders his facial vagueness claim superfluous because he is the only person to whom the condition applied. See *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law."). But see *Farrell* v. *Burke*, 449 F.3d 470, 494–98 (2d Cir. 2006) (considering facial vagueness claim even after concluding that enforcement of probation condition was not unconstitutional under as applied vagueness analysis).

[9] In *Cabot*, the defendant, John Cabot, pleaded guilty to the federal crime of persuading a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct in violation of 18 U.S.C. § 2251 (a) (2000). *United States* v. *Cabot*, supra, 325 F.3d 385. In *Simmons*, the defendant, Alan Simmons, pleaded guilty to the federal crimes of (1)

and detailed definition of the term "child pornography."[10] *United States* v. *Simmons*, supra, 75, 80–83; *United States* v. *Cabot*, supra, 385. For a similar reason, we conclude that the defendant in the present case had adequate notice that his possession of the photographs was prohibited by the special condition.

At the time the defendant committed the underlying offenses of possession of child pornography in May, 2003, General Statutes (Rev. to 2003) § 53a-196d (a) provided in relevant part: "A person is guilty of possessing child pornography when he knowingly possesses child pornography, as defined in subdivision (13) of section 53a-193. . . ." General Statutes (Rev. to 2003) § 53a-193 (13) defined "child pornography" as "any material involving a live performance or photographic or other visual reproduction of a live performance which depicts a minor in a prohibited sexual act."

In March, 2006, when the defendant pleaded guilty to two counts of possession of child pornography and the court imposed his sentence, including the conditions of probation, General Statutes (Rev. to 2003) § 53a-193 (13) had been amended to define "child pornography" in more detail. Specifically, Public Acts 2004, No. 04-139, § 2 (P.A. 04-139), amended General Statutes (Rev. to 2003) § 53a-193 (13) by defining "child pornography" as any "visual depiction including any photograph, film, videotape, picture or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where the production of such visual depiction

---

knowingly transporting a minor in foreign commerce for the purpose of having such minor engage in illegal sexual activity in violation of 18 U.S.C. § 2423 (a) (2000), and (2) using a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct in violation of 18 U.S.C. § 2251 (a) (2000). *United States* v. *Simmons*, supra, 343 F.3d 75.

[10] See 18 U.S.C. § 2256 (8) (2000) (defining "child pornography").

involves the use of a person under sixteen years of age engaging in sexually explicit conduct . . . ."[11] In addition, in 2004, the legislature had added to § 53a-193 a definition for the term "sexually explicit conduct"; P.A. 04-139, § 2, codified at General Statutes § 53a-193 (14); which the legislature defined as "actual or simulated (A) sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal physical contact, whether between persons of the same or opposite sex, or with an artificial genital, (B) bestiality, (C) masturbation, (D) sadistic or masochistic abuse, or (E) lascivious exhibition of the genitals or pubic area of any person."

In determining whether a condition of probation is unconstitutionally vague, we adhere to the well established common-law rule that "everyone is presumed to know the law and . . . ignorance of the law excuses no one from criminal sanction." *State* v. *Knybel*, supra, 281 Conn. 713. Accordingly, we conclude that the special condition in the present case was not unclear as applied to the defendant because the statutory scheme on child pornography existing at the time that the special condition was imposed prohibited the possession of images of "sexually explicit conduct," which included the "lascivious exhibition of the genitals or pubic area" that appeared in the photographs of his former girlfriend, and, thus, those photographs would have been understood by any reasonably intelligent person as constituting "sexually stimulating material."[12] Indeed, the photographs in question would reasonably have been deemed sexually explicit under any definition of pornography. See, e.g., Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) (defining "pornography" in

---

[11] This definition has not been amended since 2004.

[12] To the extent the defendant did not understand the special condition because it did not define the term "sexually stimulating material," he could have contacted his probation officer and sought clarification as to whether he could possess the material in question *before* he acquired it.

relevant part as "material . . . that depicts erotic behavior and is intended to cause sexual excitement").

We reject the defendant's contention that he had a right to possess the sexually explicit photographs of his former girlfriend merely because of her status as a girlfriend. The defendant's former girlfriend was not his wife, and he no longer had a relationship with her, romantic or otherwise, when he was found to be in possession of the photographs. See *United States* v. *Brigham*, 569 F.3d 220, 233 (5th Cir.) (rejecting defendant's argument that condition prohibiting possession of "pornographic, sexually oriented or sexually stimulating" material did not apply to video recording of defendant engaged in sexually explicit conduct with former girlfriend in part because defendant admitted to possessing and viewing video recording during probation some time after romantic relationship with former girlfriend had ended), cert. denied, 558 U.S. 1093, 130 S. Ct. 1013, 175 L. Ed. 2d 621 (2009). Moreover, it was the defendant's former girlfriend who had filed the complaint alleging that he possessed the photographs. Accordingly, there is no merit to the defendant's claim.

We next consider whether the second prong of the as applied vagueness test is satisfied, namely, that the condition provided sufficient guidance to avoid arbitrary and discriminatory enforcement. With respect to that issue, the Second Circuit Court of Appeals has stated: "As a practical matter, a court analyzing an as-applied vagueness challenge may determine that the statute generally provides sufficient guidance to eliminate the threat of arbitrary enforcement without analyzing more specifically whether the particular enforcement was guided by adequate standards. In fact, it is the better (and perhaps more logical) practice to determine first whether the statute provides such general guidance, given that the Supreme Court has indicated that the more important aspect of the vagueness

doctrine is the requirement that a legislature establish minimal guidelines to govern law enforcement. . . . If a court determines that a statute provides sufficient guidelines to eliminate generally the risk of arbitrary enforcement, that finding concludes the inquiry.

"[When] a statute provides insufficient general guidance, an as-applied vagueness challenge may nonetheless fail if the statute's meaning has a clear core. . . . In that case the inquiry will involve determining whether the conduct at issue falls so squarely in the core of what is prohibited by the law that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances." (Citations omitted; internal quotation marks omitted.) *Farrell* v. *Burke*, 449 F.3d 470, 493–94 (2d Cir. 2006).

Under the foregoing standard, we cannot conclude that the special condition prohibiting the defendant from possessing "sexually stimulating material deemed inappropriate by a [p]robation [o]fficer" provided sufficient, general guidance for law enforcement purposes. The defendant's conduct, however, fell so clearly within the core meaning of the special condition that there could be no substantial concern as to its arbitrary enforcement because no reasonable enforcing officer could doubt the condition's application in light of the defendant's conviction and the graphic nature of the photographs in question. As the trial court noted, "[a] probation policy does not need to exist to determine that these photographs . . . are very sexual in nature, depicting a female private part in a very sensual, sexual manner . . . ." We thus conclude that the defendant's as applied vagueness claim must fail under *Golding* and the plain error doctrine.

## III

### ▸ EVIDENTIARY INSUFFICIENY CLAIM

The defendant's final claim is that the evidence adduced at the revocation hearing was insufficient under the third prong of *Golding* to support the trial court's finding that he had violated the special condition. The defendant claims that the testimony revealed that the nude photographs of his former girlfriend were placed on his home computer sometime prior to his probation and that he was not aware during his probation that the photographs were still there. He also contends, insofar as the evidence indicated that the photographs were accessed during his probation, that there was testimony at the revocation hearing that the file containing the photographs may have been accessed by antivirus software searching for malicious codes and not by him. The state responds that the evidence supports the trial court's finding that the defendant violated his probation because sexually explicit photographs were found on his home computer and that the defendant possessed those photographs without the permission of his probation officer, who deemed them to be inappropriate after they were discovered. We conclude that there was sufficient evidence to support the trial court's finding and that the defendant's claim must fail under the third prong of *Golding*.

The following additional facts are relevant to our resolution of this claim. Martin, the defendant's probation officer, testified for the state at the revocation hearing that, on June 4, 2007, she went to the defendant's home to investigate a complaint by his former girlfriend that he had threatened in an e-mail to send to her coworker nude photographs he previously had taken of her. The defendant admitted to Martin that, at one point, his computer contained those photographs but that they had been deleted and that no pornography

or other questionable material remained on his computer. Martin testified that the computer found at the defendant's residence nonetheless had been seized and taken to the state police forensic laboratory for the purpose of conducting an examination of the hard drive for evidence of pornographic material. The laboratory subsequently sent a report to Martin accompanied by a series of photographs of the defendant's former girlfriend, clothed and naked, that had been obtained from the computer's hard drive. Martin testified that she had not been aware before she went to the defendant's home that there might be sexually explicit photographs on his computer, that the defendant had neither sought nor been given permission to possess the photographs, either on his computer or anywhere else, and that possession of the photographs constituted a violation of the conditions of his probation because the photographs were sexually explicit. Martin also testified that she might be suspicious of the former girlfriend's motives in filing the complaint against the defendant because "she was a woman possibly scorned . . . ." Martin later conceded, however, that she never had met the defendant's former girlfriend and was not in a position to judge whether she was a credible person.

Steven DiPietro, a computer forensic examiner with the state police forensic laboratory, also testified for the state that he had examined the hard drive of the defendant's computer, had found that it contained photographs of a sexually explicit nature and that the photographs had not been deleted. He further testified that he was able to determine when the files containing the photographs had last been accessed. He explained that persons or software may access files and that, in some cases, antivirus software may change the last accessed dates. DiPietro also stated that he could not tell for certain whether a person or computer software had last accessed the files containing the photographs, but it

was possible that antivirus software had been running at the time and had accessed those files for the purpose of detecting malicious codes. He added that one particular photograph of a naked woman had last been accessed at a different time than the other photographs, and that no attempt had been made to delete that photograph. He stated that the photographs had last been accessed on April 21, 2007, except for the one photograph that had last been accessed on May 13, 2007.

James Ritchie testified for the defense that he had extensive knowledge of computers and had examined the defendant's computer hard drive. Ritchie described in more detail the procedure that was followed in examining the hard drive and corroborated most of DiPietro's testimony, including his testimony regarding the last dates the files containing the photographs had been accessed and his testimony that no apparent attempt had been made to delete the sexually explicit material from the hard drive.

In *Douglas* v. *Buder*, 412 U.S. 430, 432, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973), the United States Supreme Court held that a probation revocation is "invalid" under the due process clause of the fourteenth amendment when the record is "totally devoid of evidentiary support" for a court's finding of a probation violation. Accordingly, we must examine the record in the present case to determine whether the trial court's finding that the defendant had violated the special condition was devoid of evidentiary support.

We conclude that there was sufficient evidence in the record to support the trial court's finding. Witnesses testified at the revocation hearing that sexually explicit photographs had been found on the hard drive of the defendant's home computer, there had been no attempt to delete the photographs, and they had last been accessed on April 21, 2007, and May 13, 2007, during

the defendant's probation. In addition, the defendant had neither sought nor been given permission by his probation officer to possess the photographs, either on his computer or anywhere else, and the officer deemed possession of the photographs a clear violation of the special condition. We therefore conclude that the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other justices concurred.